IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:21-cr-294-RLW |
| REBEKAH PATTERSON-SMITH, | ) ) ) |
| Defendant. | ) ) |

**DEFENDANT'S SENTENCING MEMORANDUM**

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████

 

(Ms. Patterson-Smith's Driver's License photo vs. her photo on June 11, 2021)







**II.   Trying to Escape this Cycle of Abuse, Ms. Patterson-Smith Committed the Instant Offense: Using Someone's Identity to Rent an Apartment**

—Ms. Patterson-Smith finally gained the courage to leave, with the hopes she could build a peaceful life without reliance on these men. Ms. Patterson-Smith did this for her own safety, but also for her daughter, who she worried was also being abused by her father.

Ms. Patterson-Smith, however, had nowhere to go. Stressed that she could not quickly rent a place in her own name, Ms. Patterson-Smith, out of desperation, used C.C.'s



4

social security number to rent an apartment.  And Ms. Patterson-Smith lived there for about two months with her daughter until C.C. confronted her and called the police.

Homeless, Ms. Patterson-Smith reverted back to what she knew by jumping into a new relationship with Mr. Rea who was about to get out of prison.  Wanting to maintain a stable life for her daughter, a friend took over guardianship so that A⬛ would have a roof over her head and constancy.  The guardianship also spared A⬛ witnessing the ⬛⬛⬛.

### III. Ms. Patterson-Smith is Working Hard to Maintain Her Sobriety While Managing her Mental Health

Since the offense, which is now over a year in the past, ⬛⬛⬛ Not surprisingly, Ms. Patterson-Smith's mental health has suffered due to all these abusive relationships.  Diagnosed with PTSD and a panic disorder, Ms. Patterson-Smith takes clonazepam to treat her mental health.  *See* PSR ¶ 64.

Ms. Patterson-Smith also used marijuana with her medical marijuana card. Exhibit J, attached (Missouri medical marijuana card),  But, Ms. Patterson-Smith has also abused methamphetamine, prescription pills, and heroin to self-medicate her trauma.  PSR ¶ 67. Ms. Patterson-Smith has fought a long battle to become sober by seeking out medical treatment through Dr. Glick, prior to this case.  *Id.* ¶¶ 64, 67,  Dr. Glick  prescribed her Subutex to control her opiate addiction.. On top of medication, Ms. Patterson is also engaged in counseling through Pretrial Services and a 12-step program.  *See id*.¶¶ 64, 65.

Ms. Patterson-Smith's long-standing substance abuse disorder, and her fragile mental health, requires daily effort through all her medical interventions and counseling. While on Pretrial Release for the past seven months, Ms. Patterson-Smith, at times, has taken a step back.  PSR ¶ 8.  But, through the stress of this case while being victimized,

5

once again, she has never given up. Ms. Patterson-Smith is constantly looking forward—seeking out more stable surroundings and a stronger support system by moving in with her mother, while she confronts her past—all in an effort to become a better person for herself and her children.

## IV. Continued Supervision is Necessary to Help Ms. Patterson-Smith's Sobriety While She Can Work to Pay Restitution and Alleviate COVID Exposure

With a Guidelines range of 0-6 months, this Court should order Ms. Patterson-Smith to probation so that she can not only continue with her counseling, but her medication regime as well. Taking Subox daily, it is far from certain the Bureau of Prisons ("BOP") will continue to provide Ms. Patterson-Smith this necessary prescribed medication. Indeed, in 2019, the American Civil Liberties Union ("ACLU") sued the BOP on behalf of Melissa Godsey, an incarcerated woman, because "not a single federal prison was providing buprenorphine to people like her who were entering prison already enrolled in a treatment program." Exhibit K, attached, at p. 3 (Beth Schwartzapfel, *Drugs that treat opioid addiction and overdoses not widely available in federal prisons*, USA Today, Aug. 11, 2021). After the ACLU sued, the BOP ultimately agreed to provide the medication, which was "the third time that year that the bureau agreed to provide addiction medication in response to lawsuits." *Id*. If Ms. Patterson-Smith does not take her medication as prescribed, it will not only risk her sobriety, withdrawal will also damage physical and mental health as well. *See* id. (describing Ms. Godsey's withdrew so much so she contemplated suicide).

Further, Ms. Patterson-Smith has shown on pretrial that she is capable of finding employment. *See* PSR ¶¶ 77-79. Working will ensure she can start paying restitution sooner rather than later.

Finally, COVID is still a concern within the BOP, with over 42,000 incarcerated people who have been infected and 266 people who have died.[4] Delta, the main variant,

---

[4] https://www.bop.gov/coronavirus/.

6

does not spare younger people. Often, the largest group of those hospitalized with COVID were 18- to 49-year-olds in the past several months, according to Centers for Disease Control ("CDC") data.[5] It is also particularly troubling for people, like Ms. Patterson-Smith with pre-existing health conditions, such as her high blood pressure and lung-related ailments. PSR ¶ 62.

The BOP's track record shielding people confined within its walls from infection and more severe illness is abysmal. Prior to Delta, BOP "COVID-19 case rates and standard mortality ratio were approximately 5 and 2.5 times [higher than] . . . in U.S. adults" according to a study published by the American Journal of Preventive Medicine.[6] The study found, not surprisingly, "the high BOP case rate relative to that of U.S. adults may be attributed to close contact within congregate living environments, combined with numerous opportunities for COVID-19 introduction from staff with community-acquired infections, new intakes from other jurisdictions, and inmates with hospital-acquired infections."[7] The CDC likewise recognizes that "[l]iving in prison . . . puts you at higher risk for getting COVID-19."[8]

Because of the risks incarceration poses to Ms. Patterson-Smith's health, this Court should refrain from ordering a custodial sentence so she can work to start paying restitution.

---

[5] CDC, COVID-19-*Associated Hospitalization by Age*, https://gis.cdc.gov/grasp/COVIDNet/COVID19_5.html.

[6] Robin Toblin and Liesl Hagan, *COVID-19 Case and Mortality Rates in the Federal Bureau of Prisons*, Am. J. Prev. Med. 2021 Jul, 61(1): 120-123, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7905372/.

[7] *Id.*

[8] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/living-prisons-jails.html.

## Conclusion

Based on the above, this Court should order a sentence of probation.

Dated: November 22, 2021

                                             Respectfully submitted,

                                             /s/Rachel M. Korenblat

                                             RACHEL M. KORENBLAT

                                             Assistant Federal Public Defender
                                             1010 Market Street, Suite 200
                                             St. Louis, Missouri 63101
                                             Telephone: (314) 241-1255
                                             Fax: (314) 421-3177
                                             E-mail: Rachel_Korenblat@fd.org

                                             ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2021 the foregoing was filed electronically with the Clerk of the Court to be served by ECF upon Assistant United States Attorney, John Ware.

                                             /s/Rachel M. Korenblat
                                             RACHEL M. KORENBLAT
                                             Assistant Federal Public Defender